David R. Jordan, Ariz. Bar No. 013891
*The Law Offices of David R. Jordan, P.C.*
1995 State Road 602
PO Box 840
Gallup, NM 87305-0840
(505) 863-2205
Fax: (866) 604-5709
Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | | |
|---|---|---|
| Maximilian Soza Fees, | ) | No. |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **VERIFIED COMPLAINT** |
| | ) | **AND APPLICATION FOR A** |
| Arizona State University, Dr. Michael | ) | **PRELIMINARY AND** |
| Crow, President of Arizona State | ) | **PERMANENT INJUNCTION** |
| University, Dr. Cassandra Aska, Dean | ) | |
| Students of Arizona State University, Dr. | ) | |
| Ron Hicks, Senior Associate Dean of | ) | |
| Students of Arizona State University, | ) | |
| Elizabeth Rosenkrantz, Executive | ) | |
| Director, Associated Students of Arizona | ) | |
| State University, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

For his Complaint against Defendants, Plaintiff alleges the following:

1

1. This is an action asserted under the Civil Rights Act of 1871, 42 U.S.C. § 1983, to redress the violation of the free speech rights of the Plaintiff by the Defendants. Jurisdiction is appropriate pursuant to 42 U.S.C. § 1983.

## I. THE PARTIES

2. Plaintiff is a student enrolled at Arizona State University (ASU).

3. Arizona State University is a public university of the State of Arizona.

4. Dr. Michael Crow is the President of ASU. He is sued for prospective injunctive relief in his official capacity.

5. Dr. Cassandra Aska is the Dean of Students of Arizona State University. She is sued for prospective injunctive relief in her official capacity.

6. Dr. Ronald Hicks is a Senior Associate Dean of Students of Arizona State University. He is sued for prospective injunctive relief in his official capacity.

7. Elizabeth Rosenkrantz is the Executive Director of the Associated Students of Arizona State University (ASASU). She is sued for prospective injunctive relief in her official capacity.

8. Associated Students of Arizona State University (ASASU) is the student government of ASU.

9. Defendant ASU, as a public institution of higher education, is responsible for enforcing the Arizona Board of Regents policies and procedures.

2

10. Defendants may regulate speech through the Code by imposing reasonable restrictions of time, place and manner so long as such regulation does not violate the First Amendment.

11. Defendants provide professional administrative oversight to ASASU, and, among other things, have a responsibility to ensure that student First Amendment Rights are not violated.

12. To that end, the Arizona Board of Regents has required compliance with the First Amendment as follows. In Board Policy 1-124(A), the ABOR states: "The primary function of Arizona's public universities is to promote the discovery, improvement, transmission and dissemination of knowledge through research, teaching, discussion and debate. The universities must strive to ensure the fullest degree of intellectual freedom and free expression. It is not the proper role of a university to shield individuals from speech protected by the First Amendment, including ideas and opinions that may be unwelcome, disagreeable or deeply offensive."

## II. THE ELECTION

13. Plaintiff was a candidate for president of the ASASU Undergraduate Student Government for the Tempe campus ("ASASU USG Tempe").

14. ASASU adopted the *Elections Code of ASU* for student elections (the "Code"). This Code governs undergraduate student government elections.

3

15. Plaintiff was the successful candidate for president in the ASASU USG Tempe election held on April 21, 2020. He won 344 more votes than his opponent and achieved nearly a 10% margin of victory.

16. On election day, Natalie Jester, campaign manager for Plaintiff's opponent, filed a complaint against Plaintiff alleging violations of the Code.

17. The complaint eventually was sustained by the ASASU Supreme Court, and the Supreme Court disqualified Plaintiff. Plaintiff is bringing this action because the enforcement of the Code by the ASASU Supreme Court, and the subsequent ratification of that disqualification by the Defendants, violates Plaintiff's rights under the First Amendment to the United States Constitution.

18. As is stated below, the conduct of the Defendants violates the First Amendment rights of students, including Plaintiff, necessitating this action.

19. The Jester complaint alleged violations of the Code. Three of these complaints were sustained by the ASASU supreme court, resulting in Plaintiff's disqualification. The supreme court's ruling is attached as Exhibit A.

### III. PLAINTIFF WAS DISQUALIFIED FOR FREE SPEECH ON INSTAGRAM

20. Paragraph 6-4.1 of the Code provides, "Any candidate or campaign staff member who intentionally destroys, removes, steals, defaces, or damages

4

campaign or non-campaign materials shall be disqualified or cause the disqualification of their affiliated ticket to the discretion of the Elections Commissioner."

21. Defendants describe comments on the social media site Instagram as a "campaign material". To be clear, Plaintiff never destroyed, tampered, removed or drowned out any posts or comments on Instagram. Rather, his supporters added "comments" and "likes" on Instagram in an effort to increase visibility of Plaintiff's campaign in relation to the opponent.

22. The comments addressed by the Jester complaint occurred on an account called "Tempebarstool".

23. Tempebarstool is a social media account on Instagram. It is not affiliated with ASU. It has approximately 77,000 followers, who comment on issues of local interest. The account has no affiliation with Plaintiff, his opponent or his ticket. Rather, it provided a neutral forum for students and non-students to comment on issues interesting residents of the Tempe area. In this sense, Tempebarstool is a public forum.

24. Supporters of both Plaintiff and his opponent commented on Tempebarstool and posted "likes". "Likes" are small graphical indications that an Instagram user supports a comment.

25. Members of the Plaintiff's campaign staff wanted students to express their support by commenting and "liking" comments that promoted visible

5

support for the campaign. At the same time, the opponent's ticket also posted comments and "likes" for their campaign. Plaintiff and his supporters hoped, for campaign purposes, that they would receive more positive comments and likes than their opponents.

26. There was substantial competition from both campaigns in the comment section of the "Tempebarstool" post to the point where neither campaign dominated.

27. In this sense, the Tempebarstool account was akin to a rally. In a rally, both sides organize supporters hoping that the support of these persons will be more visible than the support given to their opponent. Free speech by both sides is absolutely protected by the First Amendment, and the comments and likes on the neutral Instagram site should receive the same protection.

28. The Tempebarstool account was very popular and received many comments by Instagram users from both campaigns. Many comments from both campaigns received likes. The likes were denoted by clicking on a heart next to the post or the comments.

29. Plaintiff was disqualified due to the pro-Plaintiff likes and comments on Instagram. In this way, Defendants punished Plaintiff for content-based reasons. Plaintiff's opponent was not punished for the comments and likes of her supporters. Only pro-Plaintiff comments and likes were deemed to be worthy of causing disqualification.

6

30. Defendant imposed a singularly disqualifying penalty on the Plaintiff based on this competitive activity on the Tempebarstool account. The post was of a screenshot of one of Plaintiff's supporters encouraging someone who was asking her on a date to support Plaintiff's ticket.

31. Defendant punished the Plaintiff for the speech of students and individual citizens within this public forum. The Plaintiff was penalized with nine infraction points, enough to disqualify the ticket, for the free expression of support on the comment feed of a post about the campaign they supported. This is the very nature of competitive political activity and is protected speech. This violated the Plaintiff's First Amendment Rights and also the rights of his supporters.

### IV. PLAINTIFF WAS DISQUALIFIED FOR FAILING TO POLICE THE FREE SPEECH OF OTHER STUDENTS

32. The ASASU supreme court also justified the disqualification of Plaintiff due to his failure to engage in a prior restraint of the free speech of two students, Jack Fuller and Will Owens.

33. Mr. Fuller made some off-hand comments to a teaching assistant in the presence of two classmates on a Zoom call before the start of a class.

34. Mr. Fuller was a candidate on Plaintiff's ticket. He was running for Vice President of Policy.

7

35. Jester alleged that Jack Fuller violated Chapter 5-3.1 of the Code. This section reads as follows:

    5-3.1 USG Elections advertising within physical classrooms is permitted.
    A. Only candidates and registered campaign volunteers may be permitted to advertise USG Elections in classrooms.
    i. The candidate or campaign volunteer must obtain explicit permission in the form of a signature from the course professor in a manner determined by the elections commissioner.
    ii. The candidate or campaign volunteer must follow the advertising template for their presentation provided to them by the assistant elections commissioner.
    iii. The candidate or campaign volunteer is required to record the professor's name, class prefix, and class time in a manner determined by the elections commissioner.
    B. The advertising template shall be a script, determined by the elections commissioner and the assistant elections commissioners and specific to each campus, that candidates and campaign volunteers must adhere to in classrooms.
    i. Each campus advertising template must be approved by a simple majority of its respective USG Senate.
    ii. The advertising template shall include, at minimum, an explanation of USG elections and the dates of the voting cycle.

36. On election day, Nobel Laureate, Professor Edward Prescott, Teaching Assistant Matthew Millington and three students were present on a Zoom call prior to the start of instruction of ECN-413, Advanced Honors Macroeconomics. Prior to class beginning, TA Millington asked Fuller "How's it going?" Fuller responded: "I'm just going to keep texting people to vote, if you want more, vote -- no I'm kidding I think technically it's illegal to campaign in class, so I have to be careful."

8

37. In an email, TA Millington later stated that he asked Fuller how he was doing before class began because he knew Fuller was stressed about the campaign.

38. After instruction began, no other mention of the campaign occurred. In the Zoom call recording, TA Millington is heard to say, "well guys…we are few in numbers, so we might as well get started." That statement was made after the short discussion between Millington and Fuller.

39. Defendants disqualified Plaintiff, in part, because of a finding by ASASU's supreme court that this "casual banter" violated Chapter 5-3.1 of the Code.

40. Plaintiff contends that Defendant's position violates his First Amendment rights. College student elections are a limited public forum. A university may not adopt a rule that conditions candidacy in the limited public forum upon a candidate's agreement to suppress the free speech rights of others.

41. The precedent of this case is that any exercise of free speech made by a candidate will result in disqualification. Even off handed comments, or statements about one's state of being, can succeed in causing a candidate to be disqualified. In the future, to avoid disqualification, a candidate will have to engage in massive prior restraints of the free speech of ASU students. Prudent candidates would have to police other students to ensure that no student would be allowed to make any statement to anyone that could possible by construed as an "in class" statement.

42. The ASASU supreme court also penalized Plaintiff for failing to restrain the free speech of Will Owens. Unlike Fuller, Mr. Owens was not a candidate nor was he a member of Plaintiff's campaign staff.

43. Section 5-2 of the Code reads as follows:

   5-2: CAMPAIGN STAFF ACCOUNTABILITY

   5-2.1 Each candidate or ticket must provide the Elections Department with a list of their campaign staff and update this list immediately regarding any personnel changes. This Campaign Staff Roster will be maintained online, visible only to the Elections Department.

   5-2.2 Any mentions of "campaign staff" in the Elections Code shall refer exclusively to those people listed on the Campaign Staff Roster.

44. Mr. Owens made a comment about his support of Plaintiff during instruction in a class Zoom call. This action was not endorsed, encouraged, requested, directed, assisted or ratified by Plaintiff. This was simply one of ASU's tens of thousands of students making a comment about Plaintiff.

45. Again, the precedent of this case is that any exercise of free speech made by any one of the tens of thousands of students attending ASU can succeed in causing a candidate to be disqualified. In the future, to avoid disqualification, a candidate will have to engage in massive prior restraints of the free speech of ASU students. Prudent candidates would have to police every ASU speech forum to ensure that no student would be allowed

to make any statement to anyone that could possibly be construed as a an "in class" election statement.

46. This violates the free speech rights of Plaintiff and all of his fellow ASU students.

47. Two other complaints were dismissed by the ASASU supreme court.

## V. PLAINTIFF APPEALED TO ASU TO PROTEST THE FREE SPEECH VIOLATIONS

48. After the ASASU supreme court violated Plaintiff's free speech rights, four complaints were filed with the supreme court protesting their penalties as a direct violation of the First Amendment. The Plaintiff sent a letter requesting the Defendant immediately undertake and complete an independent review to evaluate the apparent violation of First Amendment rights and students' rights to due process to ASU's Vice President of Student Services, Dr. Joanne Vogel, and the Deputy Vice President and Dean of Students for the Tempe Campus, Dr. Cassandra Aska. This letter was dated April 26, 2020, and is attached as Exhibit B.

49. In the April 26, letter, Plaintiff requested that the ASU Administration step in to protect the free speech rights of students.

50. On April 27, 2020, Dr. Vogel responded to Plaintiff's April 26, 2020 letter, acknowledging a meeting between Plaintiff and Dean Aska later that day.

11

51. On April 28, 2020, Plaintiff wrote a letter to Defendant Crow, Dr. Vogel and Dr. James Rund, Senior Vice President of ASU. Once again, Plaintiff pleaded with the ASU Administration to step in to cure the First Amendment violations described herein. This letter is attached as Exhibit C.

52. Specific mention was made of Defendant Crow's November 19, 2019 letter to the community supporting free speech.

53. On May 6th, Dr. Vogel confirmed the receipt of the April 28th letter and responded to the Plaintiff recognizing the process set forth by Dean of Student office "to review the previous and current actions to ensure the decision reflects the rights afforded to you as a member of our ASU Community."

54. Drs. Crow, Vogel and Rund never responded to Plaintiff's letter, thus tacitly ratifying the free speech violations alleged herein.

55. On May 20th, the Dr. Hicks and Ms. Rosenkrantz provided guidance to the ASASU supreme court in its reassessment of its initial decision to penalize the Plaintiff.

56. A week later on May 27th, the supreme court reaffirmed the Plaintiff's disqualification, he again wrote a letter on May 28, 2020 to Drs. Crow, Vogel and Rund. He again asked them to step in to protect the free speech of students. This letter is attached as Exhibit D.

57. Drs. Crow, Vogel and Rund never responded to Plaintiff's letter, thus tacitly ratifying the free speech violations alleged herein.

58. On June 2nd, the Defendant further ratified the free speech violations by announcing that Plaintiff's opponent, who lost the election, would be inaugurated at 7:30 on June 9th, 2020.

59. On June 2nd, Plaintiff, through counsel, wrote to Mr. Jose Cardenas, the General Counsel of ASU to highlight the serious First Amendment issues in question.

60. On June 4th, Plaintiff, through counsel, asked for assurance that ASU will delay the inauguration to enable sufficient time to discuss the First Amendment violations. Defendants have refused to delay the inauguration.

61. Because ASU has refused its reasonable opportunities to delay the installation of ASASU officers and to cure the First Amendment violations alleged herein, Court action is necessary to protect First Amendment rights.

62. Plaintiff contends that he satisfies the requirements of a preliminary injunction on the facts of this case, and the Court should issue a preliminary and permanent injunction.

WHEREFORE, based upon the foregoing, Plaintiff respectfully requests the Court to:

   A.   Issue a preliminary injunction restraining ASU from holding an inauguration for the candidates that lost the election;

B. Advance the final trial on the merits to be heard at the same time as the preliminary injunction hearing.

C. Issue a judgment declaring that the disqualification of Plaintiff by Defendants violates Plaintiff's rights under the First Amendment to the Constitution of the United States;

D. Issue an injunction requiring the expungement of the disqualification from Plaintiff's record;

E. Issue a judgment declaring that Defendants requirement that all candidates, including Plaintiff, engage in prior content-based restraints of student's free speech rights, constitutes a content-based regulation of political speech in violation of Plaintiff's rights under the First Amendment to the Constitution of the United States;

F. Issue preliminary and permanent injunctions prohibiting Defendants from enforcing any provision of the Code that would constitute a prior content-based restraint on free speech;

G. Issue an injunction directing that the ASASU supreme court's decision be overturned, and directing Plaintiff and his ticket to be installed to their rightfully elected posts;

H. Issue a judgment awarding Plaintiff his reasonable attorney fees and costs against Defendants pursuant to 42 U.S.C. §1988 and any other applicable law; and

I. Issue a judgment awarding Plaintiff all other relief that is just and proper under the circumstances.

*The Law Offices of David R. Jordan, P.C.*

*/s/ David R. Jordan*
David R. Jordan
1995 State Road 602
PO Box 840
Gallup, New Mexico 87305
Attorney for Plaintiff