David R. Jordan, Esq. #013891
*The Law Offices of David R. Jordan, P.C.*
1995 State Road 602
PO Box 840
Gallup, NM 87305-0840
(505) 863-2205
Fax: (866) 604-5709
Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTICT OF ARIZONA

| | |
|---|---|
| Maximilian Soza Fees, ) | No. 2:20-CV-01131-SRB |
| ) | |
| Plaintiff, ) | **REPLY IN SUPPORT OF MOTION** |
| ) | **FOR NEW TRIAL AND MOTION** |
| v. ) | **FOR LEAVE TO AMEND** |
| ) | **COMPLAINT** |
| Arizona Board of Regents; Dr. ) | |
| Cassandra Aska, Dean of Students of ) | |
| Arizona State University, Dr. Ronald ) | |
| Hicks, Senior Associate Dean of ) | |
| Students of Arizona State University, ) | |
| Elizabeth Rosenkrantz, Executive ) | |
| Director, Associated Students of Arizona ) | |
| State University, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Plaintiff Maximilian Soza Fees, by and through his undersigned counsel, hereby submits his reply in support of his motion for new trial and motion for leave to amend.

## ARGUMENT

### I.    *The Eleventh Amendment Does Not Bar The Requested Relief.*

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted

1

against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State." Const. Amend. XI. As interpreted by the Supreme Court, this language bars a citizen from suing his state (or another state)—under federal or state law—unless the state waives its sovereign immunity or Congress abrogates that immunity under § 5 of the Fourteenth Amendment. *See Hans v. Louisiana*, 134 U.S. 1, 10–15, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 72–73, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000).

The doctrine of *Ex parte Young*, however, is one exception to that bar. *Ex parte Young* holds that "a suit alleging a violation of the federal constitution against a state official in his official capacity for injunctive relief on a prospective basis is not a suit against the state, and, accordingly, does not violate the Eleventh Amendment." *Ex parte Young*, 209 U.S. 123, 155-56, 28 S.Ct. 441, 441, 52 L.Ed. 714 (1908).

To satisfy *Ex parte Young*, the Supreme Court has indeed ruled that the Court should make a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645, 122 S. Ct. 1753, 1760, 152 L. Ed. 2d 871 (2002). The fallacy of Defendants' argument is that it misunderstands the nature of an "ongoing" violation of the First Amendment.

Defendants argue, without support, that "ongoing" violations only occur where the violation is still going on when the lawsuit is filed and when the trial on the merits occurs. If any part of the violation occurred in the past, Defendants reason, the violation is not "ongoing". Federal courts, and in particular the Ninth Circuit courts, have

rejected this argument and have concluded that this standard is satisfied where the violation occurred in the past, but the prayer for injunctive relief relates to future conduct.

For example, courts have repeatedly held that when an employee is terminated in violation of the First Amendment, which is what happened to Plaintiff in this case, corrective injunctions are proper "prospective remedies" which cure a violation that began in the past.

> The Eleventh Circuit has repeatedly held that a request for reinstatement is cognizable via the *Ex parte Young* exception. See, e.g., *Lane v. Cent. Ala. Cmty. Coll.*, 772 F.3d 1349, 1351 (11th Cir. 2014) (holding that "[w]e have determined previously that requests for reinstatement constitute prospective injunctive relief that fall[s] within the scope of the *Ex parte Young* exception"); *Lassiter*, 3 F.3d at 1485 (classifying reinstatement as prospective relief "not barred by the Eleventh Amendment"). Nor is such a conclusion unusual. In fact, "almost every circuit court has reached the same result." *Nelson v. Univ. of Tex. at Dallas*, 535 F.3d 318, 322 (5th Cir. 2008) (collecting cases "treating reinstatement as an acceptable form of prospective relief that may be sought through *Ex parte Young*").

*Boglin v. Board of Trustees of Alabama*, 290 F.Supp.3d 1257, 1264 (N.D. Ala. 2018).

Were the Defendants correct, then "almost every circuit court" would be wrong because the termination happened in the past. These courts properly reject the Defendant's argument because the effects of the violation are still suffered by the victim until they are corrected by prospective relief.

This is a point that should not be lost in this case. *This was a job.* Plaintiff won the right in a fair election to be student body president – a paid position. He continues to lose income every day because he was, for all intents and purposes, fired by

Defendants. This is not a past violation, it is an ongoing violation that started in the past and continues to this day.

The Eleventh Circuit rejected Defendant's argument only a few months ago. In *Attwood v. Clemons*, 818 Fed.Appx. 863 (11th Cir. 2020), the Eleventh Circuit faced a First Amendment violation in the form of a state official that had blocked a citizen on social media. Even though the First Amendment violation occurred in the past, the violation had never been corrected. However, as of time of decision, the "blocking" had never been corrected. Therefore, the continuation of social media posts without correcting the past First Amendment violation was supported under *Ex parte Young*. *Attwood*, 818 Fed.Appx. at 867 ("the social media accounts he operates may be a type of public forum under the First Amendment, and if so, Representative Clemons may not be allowed to exclude others based on their views."). Because the forum still existed, and because the First Amendment violation had never been rectified, Attwood had the right under *Ex parte Young* to ask for prospective relief making sure that the violation was not repeated or continued.

This is true even if the government officials promise that the violation will not recur. In *Freedom From Religion Foundation v. Abbott*, 955 F.3d 417 (5th Cir. 2020), counsel assured the Court that the past violation was "moot" because the officials would not violate the First Amendment again. The Fifth Circuit rejected this argument. "A defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Abbott*, 955 F.3d at 425 *quoting Already, LLC v.*

*Nike, Inc.,* 568 U.S. 85, 91, 133 S.Ct. 721, 184 L.Ed.2d 553 (2013) *and Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)). In *Abbott*, as in this case, the government officials had not retracted their First Amendment violation. Therefore, the Court viewed the promise of non-recurrence "with a jaundiced eye" and ruled that the District Court had jurisdiction to cure the First Amendment violation. *Abbott*, 955 F.3d at 425.

Defendants quote Wright & Miller for the proposition that "a court may not … adjudicate the legality of past conduct by state officials." Response at 8, *quoting* § 3524.3 *Avoiding Sovereign Immunity: the Doctrine of Ex Parte Young*, 13 Fed. Prac. & Proc. Juris. § 3524.3 (3d ed.). They fail to explain to the Court that in making that statement, Wright & Miller notes in a footnote that the Ninth Circuit rejects this proposition:

> The Eleventh Amendment erects a general bar against federal lawsuits brought against a state. *Papasan v. Allain,* 478 U.S. 265, 276, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). However, suits against a state official are an exception to this bar. *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Under the doctrine of *Ex parte Young,* suits against an official for prospective relief are generally cognizable, whereas claims for retrospective relief (such as damages) are not. *Papasan,* 478 U.S. at 277–78, 106 S.Ct. 2932; *Edelman v. Jordan,* 415 U.S. 651, 664–68, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). ***Jones claims that Plaintiffs may not, consistent with the Eleventh Amendment, adjudicate the legality of past conduct. This argument confuses liability with remedy***. Although Plaintiffs' allegations are rooted in events that occurred in the past, the injunctive and declaratory relief that they seek would prevent future and ongoing illegality. The Eleventh Amendment poses no bar to Plaintiffs' claims for prospective relief.

*Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003) (emphasis added) *quoted in Wright & Miller, Jurisdiction, § 3524.3 at note 63.*

5

In this respect, and consistent with the Second Amended Complaint, Plaintiff asks the Court to recognize the following:

- Defendants have never acknowledged any wrongdoing;
- Defendants have never committed to refrain from future First Amendment violations;
- Although Defendants recently changed language in the Election Code, they did not disable their ability to punish candidates for statements made by students in a neutral, off-campus forum. This is the heart of Plaintiff's complaint, and nothing stops Defendants from repeating the violations in the next election cycle;
- The new Election Code actually provides that past decisions, including the faulty decision controlled by Defendants in this case, are precedent for future cases;
- Defendants, on an ongoing basis, recognize the candidate that lost the election as the legitimate president of the student body; and
- Defendants have never publicly recognized or acknowledged that they don't have the right to punish students for free speech exercised on non-campus public fora.

As shall be demonstrated, the Second Amended Complaint requests relief that is prospective and that remedies an ongoing First Amendment violation.

### II. The Second Amended Complaint Requests Prospective Remedies To Redress An Ongoing First Amendment Violation.

To that end, Plaintiff asserts that the relief requested in the Second Amended Complaint is prospective, is within the power of the Defendants to do, and is corrective of an ongoing First Amendment violation which has never been repaired, or even acknowledged. Sections A and D of the requested relief seek declaratory relief. An injunction is necessarily prospective, and the Supreme Court has held that declaratory relief is treated the same when it exposes the defendant to no more liability than an injunction. *See Verizon Md.*, 535 U.S. at 646, 122 S.Ct. 1753 (noting that declaratory relief "seeks a declaration of the past, as well as the future," but is permitted under *Ex parte Young* because "[i]nsofar as the exposure to the State is concerned, the prayer for declaratory relief adds nothing to the prayer for injunction")."

Section B of the Second Amended Complaint simply asks for an injunction prohibiting future First Amendment violations by the Defendants. This is prospective relief and is clearly within the power of the Defendants.

Section C asks that the student supreme court decision punishing Plaintiff for the free speech exercised by students in a neutral, off campus forum be reversed. This is the cure provision. Essential to also correcting what would become a faulty precedent that could be used.  Defendants claim that the Court cannot issue this relief because it is against a "non-party". This is false. As is demonstrated in the Second Amended Complaint, Defendants took control of the process of violating Plaintiff's rights and were direct actors in these violations. For

7

example, paragraph 120 explains how the process "had, at this point, been taken over by the Defendants." SAC, ¶ 120. If Defendants had enough control to take over the process prior to the final decision of the student court, they have enough control to reverse it.  The ASU student government operates as a department under the supervisions of the Defendants.

This order needs to be corrected. This is a future act that cures a past violation, much like rehiring a fired employee "cures" a termination that is violative of the First Amendment. *See Boglin*, <u>supra</u>.[1] These Defendants can and should be ordered to withdraw the order issued against Plaintiff in violation of his First Amendment rights.

Sections E and G of the relief ask the Court to enter an order directing that, in the future, Defendants be restrained from enforcing the sections of the Elections Code that violated Plaintiff's First Amendment rights, and that the Code be amended to make sure that such violations do not recur. This is, once again, prospective relief addressing an ongoing violation.

Section F requests a future apology, which would be an acknowledgement that the violation occurred and would remedy the poor light that the Plaintiff has suffered due to the actions of the Defendants.  Section H requests attorneys' fees

---

[1] Defendants have apparently reserved their argument that they were not involved in the First Amendment violation for a future motion to dismiss. *See* Response at n. 3. Accordingly, it will not be addressed here, other than to say that the Second Amended Complaint explains in great detail how the Defendants were directly involved in the student court's decision.

under 42 U.S.C. §1988. Finally, Section I requests other relief the Court may deem appropriate.

In sum, all of the requested relief seeks prospective relief to cure a First Amendment violation that occurred, has never been remedied, and is ongoing. All of this is permitted under *Ex parte Young*.

### III.   **Plaintiff Has Standing.**

So long as Plaintiff demonstrates an ongoing and prospective harm, he is entitled to request prospective injunctive relief to remedy that harm. *Gomes v. Univ. of Maine Sys.*, 304 F. Supp. 2d 117, 123 (D. Me. 2004) ("If the Plaintiffs are able to sustain their claim that the University's disciplinary action violated their constitutional rights, they would be entitled to demand, and this Court would have the authority to order, University officials expunge the unconstitutional disciplinary action from the Plaintiffs' University records.")

Plaintiff directly alleges that the violation of his rights was due to direct actions by Defendants Aska, Hicks and Rosenkrantz. Their conduct has never been remedied and should be corrected by the Court.

The error that Defendants make in this "standing" argument is that they fail to appreciate, as noted above, that Plaintiff is the victim of Free Speech violations that have never been corrected. The case upon which Defendants rely heavily makes it clear that Plaintiff has standing. "Plaintiffs must demonstrate a 'personal stake in the outcome' in order to 'assure that concrete adverseness which sharpens the presentation of issues' necessary for the proper resolution of constitutional questions. *[Citations*

*omitted]*. Abstract injury is not enough. The plaintiff must show that he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.' *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02, 103 S. Ct. 1660, 1665, 75 L. Ed. 2d 675 (1983).

In other words, Plaintiff is entitled to request these remedies if he "**has sustained**" an injury, and said injury was "real and immediate". Put another way, Plaintiff's injury must be both "concrete and particularized," meaning "that the injury must affect the plaintiff in a personal and individual way." *Kardules v. City of Columbus*, 95 F.3d 1335, 1347 (6th Cir. 1996).

Plaintiff has been disqualified from a democratic election that he won – he was removed from the office that he had won in an election. Plaintiff's opponent in the election is presently compensated for serving in Plaintiff's duly elected office despite having received 18% fewer votes than Plaintiff. The wages that Plaintiff and his ticket would have received total around $50,000. There is also evidence of the poor light and digital attacks on their reputations that the Plaintiff ticket has suffered due to the Defendants actions. This was a "real" injury that he "has sustained". As was explained in Section I of this brief, this violation is unremedied.

When free speech rights are at issue, Courts have demonstrably lowered the "actual injury" requirement for standing.

> When considering Briggs's standing to bring a First Amendment challenge, however, we note that Briggs ***does not bear a heavy burden*** to "demonstrate 'a claim of specific present objective harm or a threat of

> specific future harm.'" *Meese v. Keene,* 481 U.S. 465, 107 S. Ct. 1862, 95 L.Ed.2d 415 (1987) (quoting *Laird v. Tatum,* 408 U.S. 1, 14, 92 S. Ct. 2318, 2326, 33 L.Ed.2d 154 (1972)). "'While it is clear that abstract injury is not enough to establish standing ... it is equally clear that actual harm to individual values of an abstract or esoteric nature can provide the basis for standing.' So, in a variety of settings, ***standing is often found to protect*** interests in the electoral process, ***various First Amendment values***, and other intangible rights." Charles A. Wright, Arthur R. Miller & Edward H. Cooper, 13 *Federal Practice and Procedure,* § 3531.4 at 427–28 (1984) (quoting *O'Hair v. White,* 675 F.2d 680, 687 (5th Cir.1982)). "***In the context of threats to the right of free expression, courts justifiably often lessen standing requirements***." *American Booksellers Ass'n v. Virginia,* 792 F.2d 1261, 1264 n. 4 (4th Cir.1986).

*Briggs v. Ohio Elections Comm'n*, 61 F.3d 487, 492 (6th Cir. 1995) (emphasis added).

When the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue. When the Plaintiff is the object of the action, there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561–62, 112 S. Ct. 2130, 2137, 119 L. Ed. 2d 351 (1992).

The argument advanced by Defendants is rather non-sensical. Defendants argue that a Plaintiff who was the direct victim of a free speech violation, firing him from a paid position that he won at an election, has not "been injured". Defendants' advanced reason for this "non-injury" argument is that the Free Speech violation has already been committed by Defendants and is now "complete". This was addressed exhaustively above, as Plaintiff has demonstrated that the violation should be viewed as ongoing.

Legally, the issue is whether Plaintiff suffered the injury in a personal and individual way. *Kardules*, 95 F.3d at 1347.

### IV.  Defendants Must Clean Up Their Mess.

Since Defendants have not challenged, at this stage in the proceedings, the Second Amended Complaint's allegations that they directly participated, and even took control of, the actions that violated Plaintiff's rights, these allegations should be taken as true. Accordingly, the question on remedy is not whether they had a "duty" to get involved. They clearly did get involved. The question now is whether they have a "duty" to clean up their own mess.  As President Crow claimed in his November 2019 letter, ASU should be a model for the protection of First Amendment rights, yet the conduct of the Defendants in the 2020 student elections demonstrate a reckless disregard to protect the freedom of speech of the Plaintiff and his supporters making a mockery of his noble claim.

A state actor who has violated the constitutional rights of an aggrieved party can be ordered to remedy the violation. "[I]t has been settled that the Eleventh Amendment provides no shield for a state official confronted by a claim that he had deprived another of a federal right under the color of state law," *Hafer v. Melo*, 502 U.S. 21, 30, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 237, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). The "constitutional deprivation need not be pursuant to the enforcement of a state law or policy; any act by a state official—as long as it is performed under color of state law—is sufficient." See *Luckey v. Harris*, 860

F.2d 1012, 1015 (11th Cir. 1988) ("All that is required is that the official be responsible for the challenged action.").

Accordingly, at this stage, the actual question should be "Did Defendants create this mess?" If they did, they can be ordered to clean it up.

*VI.* ***Conclusion***

Plaintiff won a democratic student election but was disqualified because Defendants favored the speech of his opponent. The Second Amended Complaint alleges that Defendants Aska, Hicks and Rosenkrantz directly controlled these First Amendment violations. The Second Amended Complaint seeks remedies that are prospective based on an ongoing violation of the First Amendment. The motion for leave to amend should be granted.

**DATED** this 14th day of January, 2021.

*The Law Offices of David R. Jordan, P.C.*

*/s/David R. Jordan*
Attorney for Plaintiff