Paul F. Eckstein (#001822)
Joel W. Nomkin (#011939)
Austin C. Yost (#034602)
**PERKINS COIE LLP**
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788
Telephone: 602.351.8000
Facsimile: 602.648.7000
PEckstein@perkinscoie.com
JNomkin@perkinscoie.com
AYost@perkinscoie.com
DocketPHX@perkinscoie.com

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Maximilian Soza Fees**, | Case No. 2:20-CV-01131-SRB |
| Plaintiff, | |
| v. | **DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** |
| **Dr. Cassandra Aska**, Dean of Students of Arizona State University; **Dr. Ronald Hicks**, Senior Associate Dean of Students of Arizona State University; **Elizabeth Rosenkrantz**, Executive Director, Associated Students of Arizona State University, | **(Oral Argument Requested)** |
| Defendants. | |

# Table of Contents

Page

**Introduction** ................................................................................................. 1

**Factual Background** ....................................................................................... 2

    I.     The ASASU Supreme Court disqualified Fees' presidential ticket. ............. 2

    II.    The ASU Employees did not intervene in the ASASU Supreme
          Court's disqualification decision. ..................................................................... 3

**Legal Standard** .............................................................................................. 4

**Argument** ....................................................................................................... 4

    I.     The SAC alleges no facts that plausibly establish that any of the ASU
          Employees proximately caused the claimed deprivation of Fees' free
          speech rights. ................................................................................................... 4

          A.     The SAC alleges no facts that plausibly establish that any
                of the ASU Employees encouraged or coerced the ASASU
                Supreme Court to reaffirm its disqualification of Fees'
                presidential ticket. .................................................................... 5

          B.     The SAC alleges no facts that plausibly establish that any
                of the ASU Employees had a duty to "cure" the ASASU
                Supreme Court's claimed constitutional violation. ............................. 7

    II.    Fees cannot recover any of his requested relief. ........................................... 8

          A.     Fees lacks standing to recover any injunctive or declaratory
                relief. ......................................................................................... 9

          B.     Fees cannot recover the relief requested in paragraph C of the
                SAC because this Court lacks the authority to grant relief against
                non-parties. ................................................................................ 11

          C.     Fees cannot recover the relief requested in paragraphs C, D, E,
                F, and G of the SAC because the ASU Employees have no
                authority or duty to provide that relief. .............................................. 11

          D.     Fees cannot recover the relief requested in paragraphs A, B, C,
                D, E, F, and G of the SAC because the Eleventh Amendment
                bars that relief ........................................................................... 12

**Conclusion** .................................................................................................. 13

1

## Table of Authorities

2

**Cases** **Page(s)**

3

4

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
    526 U.S. 40, 52 (1999) ............................................................................... 6

5

*Arnold v. Int'l Bus. Machs. Corp.*,
    637 F.2d 1350 (9th Cir. 1981) ................................................................... 4

6

7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................... 4, 8, 12

8

9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................... 4

10

11

*Blum v. Yaretsky*,
    457 U.S. 991 (1982) ................................................................................... 5

12

13

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ............................................................................... 10, 11

14

15

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ............................................................................ 10, 11

16

*Decker v. Bales*,
    No. CV-16-02872, 2017 WL 6407783 (D. Ariz. Feb. 28, 2017) ................ 10

17

18

19

20

*Dharod v. L.A. City Coll.*,
    No. CV11-3902, 2011 WL 3555622 (C.D. Cal. June 7, 2011),
    *report and recommendation adopted*, No. CV 11-3902, 2011 WL
    3555793 (C.D. Cal. Aug. 11, 2011), *aff'd in part, vacated in part*,
    509 F. App'x 664 (9th Cir. 2013) .......................................................... 6, 7, 8

21

22

*Dharod v. L.A. City Coll.*,
    No. CV 11-3902, 2011 WL 3555793 (C.D. Cal. Aug. 11, 2011),
    *aff'd in part, vacated in part*, 509 F. App'x 664 (9th Cir. 2013)................. 6, 7

23

24

*Dharod v. L.A. City Coll.*,
    509 F. App'x 664 (9th Cir. 2013) ............................................................... 7

25

26

*Double J. Inv., LLC v. Automation Control & Info. Sys. Corp.*,
    No. CV-13-00773, 2013 WL 12190461 (D. Ariz. Nov. 22, 2013)................ 2

27

*Ex Parte Young*,
    209 U.S. 123 (1908) .............................................................................. 9, 12

28

*Flagg Bros., Inc. v. Brooks*,
   436 U.S. 149 (1978) ................................................................................ 5

*Golden v. Zwickler*,
   394 U.S. 103 (1969) .......................................................................... 10, 11

*Green v. Mansour*,
   474 U.S. 64 (1985) ................................................................................ 13

*Husain v. Springer*,
   494 F.3d 108 (2d Cir. 2007) .................................................................... 7

*Jones v. Donovan*,
   812 F. App'x 610 (9th Cir. 2020) .......................................................... 11

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
   140 S. Ct. 2367 (2020) .......................................................................... 10

*Mandel v. Bd. of Trs. of Cal. State Univ.*,
   No. 17-CV-03511, 2018 WL 5458739 (N.D. Cal. Oct. 29, 2018) ................ 8

*Quiroz v. ALCOA Inc.*,
   243 Ariz. 560 (2018) ................................................................................ 7

*Sebra v. Neville*,
   801 F.2d 1135 (9th Cir. 1986) ................................................................ 12

*Stevenson v. Koskey*,
   877 F.2d 1435 (9th Cir. 1989) ............................................................ 4, 7

*Students for a Conservative Am. v. Greenwood*,
   378 F.3d 1129 (9th Cir.), *amended by* 391 F.3d 978 (9th Cir. 2004) .......... 12, 13

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) .............................................................................. 10

*Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*,
   535 U.S. 635 (2002) .............................................................................. 12

**Statutes**

A.R.S. § 15-1864 .......................................................................... 7, 8, 12

42 U.S.C. § 1983 .............................................................................. 1, 6

**Other Authorities**

13 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure ................... 12, 13

Federal Rule of Civil Procedure 12(b)(6) ......................................................................... 1, 13

**Introduction**

This Court is well familiar with this case. *See* Doc. 26 (granting the motion to dismiss the First Amended Complaint ("FAC")); Doc. 34 (granting the motion for leave to amend). The Second Amended Complaint ("SAC") fares no better than its predecessors and should be dismissed with prejudice for failure to state a claim on which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

Maximilian Fees brought this 42 U.S.C. § 1983 action to challenge and overturn the decision of a student government court that disqualified him from holding office as a student body president because of violations of a student government elections code. The SAC names three ASU employees as Defendants: Dr. Cassandra Aska (Dean of Students), Dr. Ronald Hicks (Senior Associate Dean of Students), and Elizabeth Rosenkrantz (Executive Director of the Associated Students of Arizona State University ("ASASU")) (collectively, "the ASU Employees"). According to the SAC, the student government court unconstitutionally disqualified Fees' presidential ticket for the speech of his supporters and the ASU Employees should have intervened to stop the disqualification. This Court should dismiss the SAC with prejudice for two independent reasons:

*First*, Fees does not allege any facts that plausibly establish that any of the ASU Employees proximately caused the student court's decision. University employees cannot proximately cause an alleged constitutional violation by students unless they encourage or coerce the students to deprive a person of their constitutional rights or they fail to perform an act that they are legally required to perform that causes the deprivation of a person's constitutional rights. Here, although the SAC alleges that the ASU Employees worked with the student court to design the procedures that governed the student court's consideration of violations of the student elections code, the SAC fails to allege any facts that plausibly establish that any of the ASU Employees encouraged or coerced the student court to disqualify Fees' presidential ticket. The SAC also cites no authority that imposed any legal duty on any of the ASU Employees to intervene in the student court's disqualification decision. The SAC thus fails to establish proximate causation as a matter of law.

*Second*, Fees has no right to any of the relief that he seeks. The Eleventh Amendment bars Fees' requests for retrospective relief, such as an injunction to overturn the student court's disqualification decision. And Fees' requests for prospective relief fail both for lack of standing and because Fees alleges no facts that could make the ASU Employees personally responsible for providing his requested remedies.

**Factual Background[1]**

While this Court is already familiar with the factual background of this litigation, [Doc. 26 at 1–3], we summarize that background below with citations to the SAC.

### I.    The ASASU Supreme Court disqualified Fees' presidential ticket.

Fees is an undergraduate student at ASU. [Doc. 35 ¶ 2]. In Spring 2020, he ran for President of the ASASU Undergraduate Student Government for ASU's Tempe campus. [*Id.*]. He received more votes in the runoff presidential election than his competitor, Jacqueline Palmer. [*Id.* ¶¶ 2–3]. But on the day of the runoff election, Palmer's campaign manager filed a complaint with the student-run ASASU Elections Department, alleging that Fees' ticket had violated the student-written ASU Undergraduate Student Elections Code ("the Student Elections Code"). [*Id.* ¶¶ 26–28, 43; *see also* Doc. 1-3 at 2].[2]

The ASASU Elections Department determined that Fees' ticket had violated the Student Elections Code and should be disqualified. [*Id.* ¶ 30]. Under the Student Elections Code, only the ASASU Supreme Court—comprised exclusively of ASU students—has the final authority to disqualify candidates, and so it reviewed the Elections Department's findings. [*Id.* ¶ 43; *see also* Doc. 1-3 at 2 (citing Chapter 11-2 of the Student Elections

---

[1] Although the ASU Employees dispute many of the SAC's factual allegations, the ASU Employees accept them as true for purposes of this motion to dismiss.

[2] Fees attached four exhibits to his original complaint. [*See* Doc. 1 (Exs. A–D)]. He repeatedly referred to those exhibits in his SAC. [*See, e.g.*, Doc. 35 ¶¶ 43, 98, 105, 127]. This Court may consider those documents in deciding this motion to dismiss because they were "attached" to the original complaint and were "incorporated by reference" in the SAC. *Double J. Inv., LLC v. Automation Control & Info. Sys. Corp.*, No. CV-13-00773, 2013 WL 12190461, at *2 n.2 (D. Ariz. Nov. 22, 2013) (citation omitted).

Code)]. The ASASU Supreme Court found that Fees' supporters had violated the Student Elections Code and thus disqualified Fees' ticket. [Doc. 35 ¶ 43; *see also* Doc. 1-3 at 3–6].

## II. The ASU Employees did not intervene in the ASASU Supreme Court's disqualification decision.

Over the next several days, Fees wrote letters asking various ASU employees—all of them non-Defendants except Dr. Aska—to intervene in the ASASU Supreme Court's disqualification of his ticket. [Doc. 35 ¶¶ 98–99, 105]. They did not do so. [*Id.* ¶ 106].

Although the recipients of Fees' letters did not intervene, the ASASU Supreme Court "reassess[ed]" its disqualification decision given Fees' accusation that the decision violated his free speech rights. [*Id.* ¶ 104]. According to the SAC, the ASU Employees (Defendants Aska, Hicks, and Rosenkrantz) "initiated, designed and directed" the procedures used in the reassessment process. [*Id.* ¶ 88]. After its review, the ASASU Supreme Court reaffirmed its decision and disqualified Fees' presidential ticket. [*Id.* ¶ 125]. The SAC alleges that Defendants Hicks and Rosenkrantz, "[a]cting as advisors and [c]lerks to the Court," and "as designees of Defendant Aska, failed or refused to correct" the ASASU Supreme Court's alleged First Amendment violation. [*Id.* ¶ 122].

The SAC cites no student government or university regulation that provides a right or procedure to review, let alone to reverse, a final ASASU Supreme Court disqualification decision. Nonetheless, after the ASASU Supreme Court reaffirmed its decision, Fees wrote to three non-Defendants—Drs. Crow, Rund, and Vogel.[3] [*Id.* ¶ 127; *see also* Doc. 1-6]. Fees' letter asked the recipients to "conduct an independent review" of the ASASU Supreme Court's interpretation of the Student Elections Code as-applied to his presidential ticket. [Doc. 1-6 at 2]. Pending that review, Fees requested that the recipients postpone Palmer's inauguration. [*Id.* at 1]. They did not do so. [Doc. 35 ¶ 128]. On June 9, 2020, Palmer was inaugurated as President of the ASASU Undergraduate Student Government for ASU's Tempe campus. [*Id.* ¶¶ 129, 132].

The day before Palmer's inauguration, Fees filed this lawsuit. [Doc. 1].

---

[3] Dr. Crow is ASU's President, Dr. Rund is the Senior Vice President of Educational Outreach and Student Services, and Dr. Vogel is the Vice President of Student Services.

**Legal Standard**

A complaint must allege enough facts that, "accepted as true, . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must allege facts that would allow a court "to draw the reasonable inference that [each] defendant is liable for the misconduct alleged." *Id.* "A pleading that offers 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action[,] will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

**Argument**

**I.     The SAC alleges no facts that plausibly establish that any of the ASU Employees proximately caused the claimed deprivation of Fees' free speech rights.**

Fees alleges no facts to plausibly suggest that any of the ASU Employees were the "proximate cause" of the alleged First Amendment violation. *Arnold v. Int'l Bus. Machs. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981). A government official proximately causes the deprivation of a plaintiff's constitutional rights only when the official:

1)     Performs an "affirmative act" that causes the deprivation of the plaintiff's constitutional rights;

2)     "[P]articipate[s] in the affirmative acts of another" that, "acting concurrently, results in the plaintiff being deprived" of his constitutional rights; or

3)     Does not perform an act that "he is legally required" to perform that "causes the deprivation" of the plaintiff's constitutional rights.

*Stevenson v. Koskey*, 877 F.2d 1435, 1439 (9th Cir. 1989). Here, the SAC tries to make the ASU Employees personally responsible for the ASASU Supreme Court's disqualification decision. But the SAC's factual allegations don't come close to plausibly establishing that the ASU Employees encouraged or coerced the ASASU Supreme Court to reaffirm its disqualification decision or that they failed to perform an act that they were legally required to perform. The SAC thus fails to establish proximate causation as a matter of law.

-4-

**A.**     **The SAC alleges no facts that plausibly establish that any of the ASU Employees encouraged or coerced the ASASU Supreme Court to reaffirm its disqualification of Fees' presidential ticket.**

At most, the SAC purports to show that the ASU Employees helped guide the *process* that the ASASU Supreme Court followed in its reassessment of its disqualification decision. But none of those allegations plausibly suggest that the ASU Employees exerted any control over the *outcome* of that process—namely, the ASASU Supreme Court's substantive decision to disqualify Fees' presidential ticket. That failure is fatal to the SAC.

A university employee cannot proximately cause a private student actor's constitutional violation based on the university employee's alleged participation in that violation unless the university employee "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the [student's] choice must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982); *see also Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 164 (1978) (observing that the United States Supreme Court "has never held that a State's mere acquiescence in a private action converts that action into that of the State").

As applied here, the SAC alleges that the ASU Employees "initiated, designed and directed" the procedures used in the ASASU Supreme Court's reassessment process. [Doc. 35 ¶ 88]. In particular, the SAC alleges that the ASU Employees and the ASASU Supreme Court gave interested students a chance to participate in a "forum" with the ASASU Supreme Court to learn about the proposed procedures, [*id.* ¶ 108], and then later to submit "bullet point[]" presentations about Fees' free speech complaints, [*id.* ¶ 93]. But this sort of innocuous help with the procedures governing the ASASU Supreme Court's reassessment of its disqualification decision is not enough to make any of the ASU Employees personally responsible for the substantive decision that the ASASU Supreme Court ultimately reached. To the contrary, Fees acknowledges that Dr. Aska explained to him the importance of *not* intervening in the ASASU Supreme Court's disqualification decision to respect "the autonomy of student government." [Doc. 1-5 at 2]. And while the SAC alleges that Dr. Hicks and Ms. Rosenkrantz served as "advisors and [c]lerks" to the

ASASU Supreme Court, [*id.* ¶ 122], the SAC fails to allege any facts that plausibly suggest that any of the ASU Employees encouraged or coerced the ASASU Supreme Court to reaffirm its decision to disqualify Fees' presidential ticket.

The Ninth Circuit has rejected a student's 42 U.S.C. § 1983 complaint in very similar circumstances because of the complaint's failure to tie a college employee's alleged involvement in the procedures used by a student government body to the substantive decision that the student government body ultimately reached. In *Dharod v. Los Angeles City College*, the plaintiff was a student who was elected to serve a term on the governing board for a student organization. No. CV11-3902, 2011 WL 3555622, at *3 (C.D. Cal. June 7, 2011), *report and recommendation adopted*, No. CV 11-3902, 2011 WL 3555793 (C.D. Cal. Aug. 11, 2011), *aff'd in part, vacated in part,* 509 F. App'x 664 (9th Cir. 2013). After the plaintiff was alleged to have engaged in misconduct, the student governing board impeached the plaintiff. *Id.* at *3–4. Significantly here, the plaintiff alleged that a college employee "was present during the impeachment process" and "incorrectly 'ruled that a two-thirds majority of the present voting members of the senate was sufficient to approve the impeachment.'" *Id.* at *8 (citation omitted). The plaintiff sued that college employee (among others), alleging that the student governing board violated her free speech rights and that the college employee's ruling on a "procedural requirement concerning the number of votes necessary to constitute an 'impeachment' of a student senator" made him personally responsible for the student governing board's impeachment decision. *Id.* at *9. The Magistrate Judge found that the plaintiff's allegations did not support a "plausible inference" that the college employee "took any affirmative act, participated in another's affirmative act, or omitted to perform an act that he was legally required to do that caused any constitutional deprivation." *Id.* The reason is that "[a]ction taken by private entities with the mere approval or acquiescence of the State is not state action." *Id.* (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999)).

The District Court adopted the Magistrate Judge's recommendation. *See Dharod v. L.A. City Coll.*, No. CV 11-3902, 2011 WL 3555793, at *1 (C.D. Cal. Aug. 11, 2011), *aff'd*

*in part, vacated in part*, 509 F. App'x 664 (9th Cir. 2013). And the Ninth Circuit agreed, holding that the plaintiff could not state a claim against the college employee "for failing to train or supervise private student actors." *Dharod v. L.A. City Coll.*, 509 F. App'x 664, 665 (9th Cir. 2013);[4] *see also Husain v. Springer*, 494 F.3d 108, 134–35 (2d Cir. 2007) (affirming the dismissal of a complaint because the plaintiff failed to allege that "school authorities coerced or encouraged" students to engage in the constitutional violation).

As in *Dharod*, Fees' failure to allege any facts that plausibly establish that any of the ASU Employees encouraged or coerced the ASASU Supreme Court to reaffirm its disqualification of Fees' presidential ticket dooms the SAC.

**B.      The SAC alleges no facts that plausibly establish that any of the ASU Employees had a duty to "cure" the ASASU Supreme Court's claimed constitutional violation.**

The SAC also fails to allege anything to suggest that any of the ASU Employees had any legal duty to "cure" the ASASU Supreme Court's alleged free speech violation. A government official's omission cannot proximately cause a constitutional violation unless the official was "legally required" to act. *Stevenson*, 877 F.2d at 1438; *see also Quiroz v. ALCOA Inc.*, 243 Ariz. 560, 564 ¶ 7 (2018) ("Whether a duty exists 'is a legal matter to be determined *before* the case-specific facts are considered.'") (citation omitted). The SAC cites no statute or university regulation that imposes a legal duty on any of the ASU Employees to interfere in the ASASU Supreme Court's disqualification decision and no facts that would establish the existence of some special relationship between any of the ASU Employees and Fees that could plausibly lead to a legal duty to intervene.

The SAC alleges only conclusions. It begins by asserting that ASU—a non-party—is "obliged to obey" the First Amendment to the United States Constitution; article II, section 6, of the Arizona Constitution; A.R.S. § 15-1864; and Arizona Board of Regents policies. [Doc. 35 ¶ 7]. But as this Court correctly held in dismissing the FAC, that assertion is "far from adequate to colorably establish each individual Defendant's duty with respect

---

[4] The Ninth Circuit reversed and vacated the District Court's ruling in part because the District Court denied the *pro se* plaintiff leave to amend her complaint. *See Dharod*, 509 F. App'x at 665.

to student supreme court decisions. More is needed." [Doc. 26 at 6]. And the SAC's attempt to provide more fails. It alleges that the ASU Employees have a "duty" to ensure that A.R.S. § 15-1864 and scores of Arizona Board of Regents policies (Policy Numbers 1-124, 5-202, 5-301, 5-303, 5-308, and 6-303) are "not violated." [*See* Doc. 35 ¶¶ 7–32]. But by their terms, none of those authorities purport to impose a legal duty on any of the ASU Employees to intervene in student court decisions when a student alleges that the court violated his free speech rights. [*See id.*].[5] And again as this Court correctly held, Arizona Board of Regents policies are "just that"—policies—that impose "no specific duties on any individual Defendant." [Doc. 26 at 7]. The SAC thus fails for the same reason that this Court ruled that the FAC failed—it does not "establish[] the existence of a duty to intervene," and so it does not "establish that a *failure* to intervene proximately caused the alleged violation." [*Id.* at 6]; *see also Mandel v. Bd. of Trs. of Cal. State Univ.*, No. 17-CV-03511, 2018 WL 5458739, at *17 (N.D. Cal. Oct. 29, 2018) (dismissing civil rights claims against university employees when the student plaintiffs alleged that the employees were "each responsible for coordinating and managing student organization events" but alleged no "facts supporting [their] assertion that [the university employees] would have been required to act to prevent [a student group's] exclusion" from a student event); *Dharod*, 2011 WL 3555622, at *4–7 (dismissing civil rights claims against college employees who were "fully informed and aware" of alleged free speech violations committed by a student governing board but who "did not intervene" in the student governing board's actions).

## II.    Fees cannot recover any of his requested relief.

Defendants' motion to dismiss the FAC argued for dismissal on the alternative ground that Fees had no right to any of his requested relief. [Doc. 14 at 11–15]. This Court

---

[5] The SAC also refers to ASU's "organizational charts," without alleging any *facts* about what these charts supposedly say. [Doc. 35 ¶¶ 10, 13]. The SAC's purely conclusory allegations about these charts fail to plausibly establish that any of the ASU Employees had a legal duty to intervene in the ASASU Supreme Court's disqualification decision. *See Iqbal*, 556 U.S. at 678 (requiring a complaint to contain more than "'naked assertions' devoid of 'further factual enhancement'" and holding that a complaint fails to state a claim on which relief can be granted when it offers "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action'") (citation omitted).

1  ultimately found it unnecessary to reach the relief issues in granting the motion. [Doc. 26
2  at 7]. But at oral argument, the Court explicitly questioned Fees' counsel about Fees'
3  standing, his requested relief against non-parties, and how that relief could comply with
4  the Eleventh Amendment. [Doc. 30-1 at 8:19–9:25; 14:15–16:20]. While Fees has thus had
5  full and fair notice of these relief issues, the SAC's Prayer for Relief largely copies and
6  pastes from—and suffers the same legal deficiencies as—the FAC.

7       Like the FAC, the SAC seeks a declaration that Fees' First Amendment free speech
8  rights were violated. [Doc. 35 (Prayer for Relief) ¶¶ A, D]. And like the FAC, the SAC
9  requests an injunction to (1) "overturn[]" the ASASU Supreme Court's disqualification
10 decision; (2) require the ASU Employees to make both a "public apology" to Fees and a
11 "public statement" that Fees' disqualification violated Fees' free speech rights; (3) order
12 the ASU Employees to "correct" the Student Elections Code before the 2021 undergraduate
13 elections; and (4) "prohibit[]" the ASU Employees from violating students' free speech
14 rights and "enforcing any provision" of the Student Elections Code that "constitute[s] a
15 prior content-based restraint on free speech." [*Id.* (Prayer for Relief) ¶¶ B, C, E, F, G]. As
16 shown below, each of these relief requests fail for multiple, overlapping reasons: Fees lacks
17 standing to recover prospective relief, he cannot recover relief against non-parties, he
18 cannot recover relief that the ASU Employees have no authority or duty to provide, and
19 the Eleventh Amendment bars his requested retrospective relief.

20       **A.    Fees lacks standing to recover any injunctive or declaratory relief.**

21       Under the *Ex Parte Young* exception to the Eleventh Amendment, the *only*
22 conceivable relief that a civil rights plaintiff such as Fees may obtain against government
23 officials sued in their official capacities is prospective equitable relief to stop an ongoing
24 violation of federal law. [*See* Section D below]. To be sure, the SAC's Prayer for Relief
25 includes items that purportedly seek such relief, from "prohibiting future violations of First
26 Amendment rights," [Doc. 35 (Prayer for Relief) ¶ B], to requiring the ASU Employees to
27 make a "public apology" to Fees, [*id.* (Prayer for Relief) ¶ F]. But Fees lacks standing to

28

obtain any of the injunctive and declaratory relief that he seeks—meaning that he has no right to any relief at all.

Under Article III of the United States Constitution, a plaintiff must establish "standing for each claim for relief." *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2379 n.6 (2020). For prospective injunctive relief, the threat of injury must be "actual and imminent, not conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Put another way, the "threatened injury must be *certainly impending* to constitute injury in fact" and allegations of "*possible* future injury" are not enough. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409–10 (2013) (citation omitted). Critically here, when a plaintiff seeks prospective injunctive relief, "past wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983). Rather, the plaintiff's "standing to seek the injunction requested depend[s] on whether he [is] likely to suffer future injury." *Id.* at 105; *see also Decker v. Bales*, No. CV-16-02872, 2017 WL 6407783, at *2 (D. Ariz. Feb. 28, 2017) (applying *Lyons*).

The same principle applies to requests for declaratory relief. As with requested injunctive relief, *Lyons* confirms that a plaintiff's assertion that he *could* face the same wrong again does not establish the "'sufficient immediacy and reality'" to "create the actual controversy that must exist for a declaratory judgment to be entered." *Lyons*, 461 U.S. at 104 (quoting *Golden v. Zwickler*, 394 U.S. 103, 109 (1969)).

Here, Fees does not plausibly allege any facts to show that he, personally, faces a "real and immediate threat" that any of the ASU Employees will again allegedly infringe his First Amendment free speech rights. The SAC centers on what Fees perceives to be a "past wrong": the ASASU Supreme Court's disqualification of his presidential ticket and the alleged failure of the ASU Employees to "correct" the ASASU Supreme Court's alleged First Amendment violation. [Doc. 35 ¶ 122]. The SAC does not begin to allege that Fees is about to experience that "wrong" again. At most, the SAC contains an allegation of "possible future injury" when it hypothesizes that Fees may "choose[] to become a

candidate" in the 2021 ASASU elections. [*Id.* (Prayer for Relief) ¶ G]. But that's not nearly enough to establish a "real and immediate threat" of future injury. *See Zwickler*, 394 U.S. at 109 (providing that a former candidate's assertion that he could be "a candidate for Congress again" could not create a case or controversy as to the constitutionality of a challenged campaign statute); *see also Lyons*, 461 U.S. at 104 (discussing *Zwickler*). The SAC doesn't allege that Fees, who is a senior, will even run in the 2021 undergraduate elections—let alone does the SAC allege that, in the implausible event that Fees does run, he again faces a disqualification of his candidacy by the ASASU Supreme Court for alleged protected campaign activity and that the ASU Employees will again fail to "correct" that decision. *See Clapper*, 568 U.S. at 409 (providing that a future injury must be "*certainly impending* to constitute injury in fact") (citation omitted). Fees therefore lacks standing to recover all of the SAC's requested injunctive or declaratory relief—even if the ASASU Supreme Court did violate his free speech rights.

**B.      Fees cannot recover the relief requested in paragraph C of the SAC because this Court lacks the authority to grant relief against non-parties.**

This Court "lack[s] the authority" to grant injunctive relief against "non-parties." *Jones v. Donovan*, 812 F. App'x 610, 611 (9th Cir. 2020). The SAC requests an injunction directing that the ASASU Supreme Court's disqualification decision be "overturned." [Doc. 35 (Prayer for Relief) ¶ C]. But Fees can't recover that relief because the ASASU Supreme Court isn't (and as a non-jural entity, can't be) a party. This Court therefore lacks the authority to grant this relief request.

**C.      Fees cannot recover the relief requested in paragraphs C, D, E, F, and G of the SAC because the ASU Employees have no authority or duty to provide that relief.**

The SAC requests a variety of injunctive and declaratory relief against the ASU Employees to stop them from "enforcing any provision" of the Student Elections Code that "constitute[s] a prior content-based restraint on free speech" and to force them to "correct" the Student Elections Code before the 2021 undergraduate elections. [*Id.* (Prayer for Relief) ¶¶ E, G]. But the SAC cites no statute or university regulation that authorizes any of the ASU Employees to provide this relief or that imposes a legal duty on any of the ASU

Employees to perform these acts. True enough, the SAC cites the First Amendment to the United States Constitution; article II, section 6, of the Arizona Constitution; A.R.S. § 15-1864; and a host of university regulations (Arizona Board of Regents Policy Numbers 1-124, 5-202, 5-301, 5-303, 5-308, and 6-303). [*See id.* ¶¶ 7–32]. But by their terms, none of those authorities impose any legal duties on the ASU Employees (Defendants Aska, Hicks, and Rosenkrantz) at all, let alone do they make the ASU Employees personally responsible for providing the relief requested in the SAC.[6] Fees therefore can't recover this relief from them. *See, e.g.*, *Sebra v. Neville*, 801 F.2d 1135, 1138–39 (9th Cir. 1986) (affirming the dismissal of a defendant when his "lack of authority" to provide the requested relief precluded the plaintiff from "obtaining injunctive relief against him").

### D. Fees cannot recover the relief requested in paragraphs A, B, C, D, E, F, and G of the SAC because the Eleventh Amendment bars that relief.

Because the SAC seeks to sue the ASU Employees in their official capacities, [Doc. 35 ¶¶ 4–6], the ASU Employees are "entitled to Eleventh Amendment immunity" unless the SAC comes within the limited exception provided by *Ex Parte Young*, 209 U.S. 123 (1908). *Students for a Conservative Am. v. Greenwood*, 378 F.3d 1129, 1130 (9th Cir.), *amended by* 391 F.3d 978 (9th Cir. 2004). To determine whether the *Ex Parte Young* exception applies, a court must "conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (alteration in original) (citation omitted). The reason is that, to come within the *Ex Parte Young* exception, a "suit must concern an ongoing violation of federal law." 13 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure (Jurisdiction) § 3524.3 (3d ed. 2020). If a violation of federal law has ceased, then "the only remedy available" to an alleged victim of the violation "would be retrospective compensatory damages, which are barred by the Eleventh Amendment." *Id.*

---

[6] As noted above (*supra* note 5), the SAC's purely conclusory allegations about ASU's "organizational charts" fail to plausibly establish that the ASU Employees have the authority or a legal duty to provide the SAC's requested relief. *See Iqbal*, 556 U.S. at 678.

1    These principles dispose of various items in the SAC's Prayer for Relief because
2    the SAC seeks to remedy conduct that has already occurred. The ASASU Supreme Court
3    already disqualified Fees' presidential ticket, and Palmer already was inaugurated as
4    President of the ASASU Undergraduate Student Government for ASU's Tempe campus.
5    [Doc. 35 ¶¶ 125, 129, 132]. The Eleventh Amendment therefore bars the SAC's request
6    for a declaration about, or an injunction "overturn[ing]," the ASASU Supreme Court's
7    disqualification. [*Id.* (Prayer for Relief) ¶ C]. *See Greenwood*, 378 F.3d at 1130 ("[T]he
8    Eleventh Amendment precludes granting the [student] plaintiffs' request for a new election
9    because it is not a request for prospective relief. Its purpose is to undo the results of an
10   election that has already been given effect."); *see also Green v. Mansour*, 474 U.S. 64, 73
11   (1985) (holding that a plaintiff could not obtain a declaratory judgment in federal court that
12   state officials violated federal law in the past under the Eleventh Amendment).

13   Beyond that, the SAC's requested prospective relief fails because it would not
14   remedy an ongoing violation of federal law. The SAC requests an injunction that would
15   require the ASU Employees to issue a "public apology" to Fees because they allegedly did
16   not "adequately protect[]" his free speech rights and to make a "public statement" that
17   Fees' disqualification was unconstitutional. [Doc. 35 (Prayer for Relief) ¶¶ C, F]. But this
18   requested relief would impermissibly require this Court to award Fees equitable relief for
19   an alleged violation of federal law that has ceased when "the only remedy available" to
20   Fees is "retrospective compensatory damages, which are barred by the Eleventh
21   Amendment." 13 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure
22   (Jurisdiction) § 3524.3 (3d ed. 2020). Fees therefore can't recover this requested relief.

### Conclusion

24   This case has no business in federal court. Fees fails to plead a plausible
25   constitutional violation, and he requests relief that he can't recover. This Court should
26   therefore dismiss the SAC with prejudice under Federal Rule of Civil Procedure 12(b)(6).[7]

---

28   [7] Should the Court for some reason find that any of the ASU Employees are subject
     to suit despite the arguments above, the ASU Employees reserve the right to argue that the

1

Dated:  March 1, 2021                    **PERKINS COIE LLP**

2

3                                         By: *s/ Joel W. Nomkin*
                                              _____
                                              Paul F. Eckstein
4                                             Joel W. Nomkin
                                              Austin C. Yost
5                                             2901 North Central Avenue, Suite 2000
                                              Phoenix, Arizona 85012-2788
6

7                                         *Attorneys for Defendants*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27    _____

28    SAC still requires dismissal because the student court's enforcement of the content neutral
      student government elections code did not violate any of Fees' First Amendment rights.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Local Rule 12.1(c) Certification**

Under Local Rule 12.1(c), the undersigned certifies that, before filing this motion to dismiss, Defendants' counsel notified Plaintiff's counsel about the issues asserted in this motion to dismiss, but Plaintiff's counsel did not respond. The parties were thus unable to agree that Plaintiff's SAC was curable in any part by a permissible amendment.

*s/ Joel W. Nomkin*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

☒       I hereby certify that on March 1, 2021, I electronically transmitted the attached documents to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

David R. Jordan
The Law Offices of David R. Jordan, P.C.
1995 State Road 602
P.O. Box 840
Gallup, New Mexico 87305-084
djlaw919@gmail.com

*s/ Clair H. Wendt*
Perkins Coie, LLP