**NOT FOR PUBLICATION**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Maximilian Soza Fees, | No. CV-20-01131-PHX-SRB |
| Plaintiff, | **ORDER** |
| v. | |
| Arizona State University, et al., | |
| Defendants. | |

Pending before the Court is Defendants Dr. Cassandra Aska, Dr. Ronald Hicks, and Elizabeth Rosenkrantz (collectively, "Defendants")' Motion to Dismiss Plaintiff Maximilian Soza Fees ("Plaintiff")'s Second Amended Complaint ("SAC") ("Motion"). (Doc. 36, ("Mot.").)

**I.    BACKGROUND**

    **A.    Factual Background**

Plaintiff is a student at Arizona State University ("ASU" or the "University") who ran for student body president in April 2020, won the election with a majority of the vote, and was subsequently disqualified by the student "supreme court" based on his campaign's violations of the student-written ASU Undergraduate Student Elections Code ("Student Elections Code"). (Doc. 35, Pl.'s Second Amended Complaint and Application for a Preliminary and Permanent Injunction ("SAC") ¶¶ 2, 26, 40.) The student supreme court is composed of members of the Associated Students of ASU ("ASASU"), ASU's student-government organization. (*Id.* ¶ 2.)

On the day of the student government election, Plaintiff's opponent filed a complaint with the ASASU Elections Department,[1] alleging that Plaintiff's ticket violated several provisions[2] of the Student Elections Code. (*Id.* ¶¶ 26–28.) The Elections Department determined that Plaintiff's ticket violated the Student Elections Code and should be disqualified. (*Id.* ¶ 43.)

Under the Student Elections Code, only the student supreme court has the authority to disqualify candidates. (*Id.* ¶¶ 5, 10.) The student supreme court reviewed the Election Department's findings, found that Plaintiff's supporters and a member of Plaintiffs' ticket violated the Student Elections Code, and disqualified Plaintiff's ticket. (*Id.* ¶ 43; Doc. 1-3, Ex. A, ASASU Supreme Court Decision in *Jester v. Fees*.)

Over the next several days, Plaintiff wrote letters asking various ASU employees—all of them nonparties to this action with the exception of Defendant Aska—to intervene in his disqualification. (SAC ¶¶ 98–99; *see* Docs. 1-4 to -6, Exs. B–D.) None did. (SAC ¶¶ 100–06.) The student supreme court, however, agreed to "reassess[]" its decision following Plaintiff's accusation that the decision violated his free speech rights. (*Id.* ¶¶ 99, 101, 104.) Plaintiff alleges that Defendants "initiated, designed and directed" the procedures used in the reassessment process. (*Id.* ¶ 88.) Following its review, the student supreme court reaffirmed its decision to disqualify Plaintiff's ticket. (*Id.* ¶ 125.) Plaintiff alleges that Defendants Hicks and Rosenkrantz, "[a]cting as advisors and [c]lerks to the [c]ourt," and "as designees of Defendant Aska, failed or refused to correct" the student supreme court's alleged violation during this review process. (*Id.* ¶ 122.)

The SAC cites no student government or University regulation providing a right or procedure to review a final student supreme court disqualification. (*See id*.) Nevertheless, Plaintiff wrote to three non-defendants[3] requesting an "independent review" of the student

---

[1] The Elections Department is a "department" of ASASU responsible for overseeing student-government elections. (*Id.* ¶¶ 2, 10, 28.) Defendant Rosenkrantz is the faculty advisor to ASASU. (*Id.* ¶ 27, 41, 42.)
[2] The alleged speech-related infractions are more fully detailed in the Court's November 19, 2020 Order. (Doc. 26, 11/19/20 Order at 2.) The Court finds it unnecessary to replicate them here because it does not reach the merits of Plaintiff's free speech claims.
[3] Plaintiff wrote to Dr. Michael Crow, President of ASU; Dr. James Rund, Senior Vice President of ASU; and Dr. Joanne Vogel, Vice President of Student Services. (Doc. 1-6,

supreme court's interpretation of the Student Elections Code as applied to his disqualification. (*Id.* ¶ 127; Doc. 1-6, Ex. D at 2.) Pending that review, Plaintiff requested that the letter recipients postpone the inauguration, which they declined to do. (SAC ¶ 128.) On June 9, 2020, Plaintiff's opponent was inaugurated as student body president. (*Id.* ¶¶ 129, 132.) The day before the inauguration, Plaintiff filed this lawsuit. (Doc. 1, Compl.)

### B.     Procedural Background

Plaintiff initially sued the University, the Board of Regents, ASASU, and several University employees, alleging that his disqualification from the 2020 ASASU student body election violated the First Amendment. (*Id.*) Plaintiff subsequently filed a First Amended Complaint and Application for a Permanent and Preliminary Injunction ("FAC"), omitting the University from the named defendants. (Doc. 10, First Am. Compl. ("FAC").) On August 24, 2020, the remaining defendants filed a motion requesting dismissal of the FAC. (Doc. 14, Mot. to Dismiss FAC.) The Court granted that motion on the bases that: (1) Plaintiff failed to plead facts establishing that any individual Defendant proximately caused the alleged First Amendment violation, and (2) Plaintiff conceded that the Board of Regents and ASASU were not appropriate parties. (Doc. 26, 11/19/20 Order; *see* Doc. 17, Pl.'s Resp. to Defs.' Mot. to Dismiss FAC at 15.)

On December 17, 2020, Plaintiff filed a motion requesting a new trial and leave to amend his FAC. (Doc. 29, Pl.'s Mot. for New Trial and Mot. for Leave to Amend.) The Court construed his Motion as a request for reconsideration of its 11/19/20 Order and denied reconsideration but granted leave to amend. (Doc. 34, 02/08/21 Order.) Plaintiff filed his Second Amended Complaint and Application for a Preliminary and Permanent Injunction ("SAC") on February 15, 2021. (SAC; *see* Doc. 29-2, Redlined SAC.) Plaintiff seeks the following relief: (A) a declaratory judgment establishing that his First Amendment rights were violated by Defendants; (B) an injunction prohibiting similar violations in the future; (C)(1) an injunction directing the ASASU student supreme court's

Ex. D at 1.)

decision be overturned; (C)(2) an order directing ASU to make a public statement communicating that Plaintiff and the rest of his ticket were the duly elected 2020 ASASU Officers, and that their disqualification was based on a violation of their First Amendment rights; (D) a declaratory judgment declaring that Defendants' requirement "that all candidates, including Plaintiff, engage in prior content-based restraints of student's free speech rights, constitutes a content-based regulation of political speech" in violation of the First Amendment; (E) an injunction restraining Defendants from enforcing any provision of the Student Elections Code that would constitute a prior content-based restraint on speech; (F) an injunction requiring Defendants to make a public apology; (G) a declaratory judgment requiring Defendants to correct the Student Elections Code; (H) an award of reasonable attorneys' fees and costs; and (I) all other relief that is just and proper.  (SAC ¶ 133(A)–(I).)  Defendants now move to dismiss the SAC.  (Mot.)

Defendants filed their Motion on March 1, 2021; Plaintiff filed his Response on March 22, 2021; and Defendants filed their Reply on April 5, 2021.  (Mot.; Doc. 39, Resp. to Mot. ("Resp."); Doc. 36, Reply to Resp. ("Reply").  The Court considers the parties' arguments below.

## II.   LEGAL STANDARD

A Rule 12(b)(6) dismissal for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011).  In determining whether an asserted claim can be sustained, "[a]ll of the facts alleged in the complaint are presumed true, and the pleadings are construed in the light most favorable to the nonmoving party." *Bates v. Mortg. Elec. Registration Sys., Inc.*, 694 F.3d 1076, 1080 (9th Cir. 2012).  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  At this early stage of the litigation, the standard does not mandate that "plaintiff's explanation . . . be true or even probable." *Starr v. Baca*, 652 F.3d 1202, 1216–

17 (9th Cir. 2011).  However, "for a complaint to survive a motion to dismiss, the nonconclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In other words, the complaint must contain enough factual content "to raise a reasonable expectation that discovery will reveal evidence" of the claim.  *Twombly*, 550 U.S. at 556.

### III.   ANALYSIS

Defendants present two arguments for why the Court should dismiss the SAC: (1) Plaintiff does not allege facts that plausibly establish that any Defendant proximately caused the student supreme court's disqualification decision; and (2) Plaintiff cannot recover any of his requested relief.  (Mot. at 1–2.)

#### A.   Proximate Cause

The Court dismissed Plaintiff's FAC on the basis that his allegations failed to establish that any named Defendant proximately caused the alleged free speech violation. (11/19/20 Order at 8.)  Plaintiff's FAC did not allege that any Defendant was involved with the initial student supreme court decision and proffered only conclusory allegations that Defendants had a duty to intervene between the first and second student supreme court decisions.  (*Id.* at 6–8.)  The Court rejected Plaintiff's argument that a policy adopted by the Board of Regents—Board Policy 1-124—imposed a duty to intervene.  (*Id.* at 6–7.) The Court also rejected the argument that Plaintiff's expectations as to what the individual Defendants should have done could suffice to establish such a duty.  (*Id.* at 7.)  The Court granted Plaintiff leave to amend to correct these deficiencies.  (*Id.* at 8.)

Defendants argue that Plaintiff's SAC fares no better than his FAC because it fails to allege that any of the Defendants proximately caused the violation by either being involved in the initial supreme court decision or by failing to exercise a preexisting duty to intervene during the review of that decision.  (Mot. at 4–8.)  Plaintiff responds by highlighting "personal statements of Defendant Hicks" made during a student forum, in which "Defendant Hicks admitted that he had been asked to make sure that free speech was

not infringed upon." (Resp. at 2.) Plaintiff further highlights the new allegations that "Defendant Aska asked Defendants Hicks and Rosencrantz to become involved in the process after the initial student court decision[]" and that "once they became involved, they ignored the student court rules of procedure, withheld the consideration and disclosure of the free speech complaints by the student court, held an 'invitation only' forum whereby the professional staff convened, lead, and answered the questions posed by students, and contrived a new complaint process where each campaign could submit 'bullet points' directly to Defendant Rosencrantz." (*Id*.) Plaintiff concludes by tracing the legal duty to intervene in the allegations that "Defendants took control of the process," which, according to Plaintiff, means "they should be responsible for the outcome." (*Id*.)

Like the FAC, the SAC does not allege that the Defendants participated in the initial student supreme court disqualification decision. (*See* SAC; Resp. at 2.) Rather, the SAC endeavors to establish that following the initial disqualification decision, the Defendants had a duty to intervene, and their failure to do so rendered them responsible for the alleged free speech violations flowing from that decision. (*See* SAC.) Plaintiff's Response replicates in detail statements made by Defendants during a Zoom call; Defendants' meeting with a "hand-picked group of students" to discuss Plaintiff's complaints about his disqualification; and various comments made by Defendant Hicks. (Resp. at 3–6.) Plaintiff italicizes, bolds, and underlines Defendant Hick's statement that he had "been asked to step in to help guide" the student supreme court after the first disqualification decision and to "make sure that the information that the [student supreme] court has is in line with the First Amendment rights and that freedom of speech [is] not infringed upon." (Resp. at 9 (citing SAC ¶ 116) (emphasis removed).) Plaintiff spins these allegations together to argue that "the outcome was not dependent on the will of the student court, but the judgment of the group Defendant Hicks called 'we'"—which, Plaintiff alleges, includes Defendants Aska and Rosenkrantz as well as Defendant Hicks. (Resp. at 7 (emphasis removed).) The Court finds these statements insufficient to establish that Defendants had any legal duty to intervene in the student supreme court decision, or that, even if they had

such a duty, their failure to intervene "proximately caused" the alleged violations.

The SAC also cites to an Arizona law imposing a duty on state universities to protect students' free speech rights; to Board Policy 1-124, which conveys a policy of ensuring full freedom of expression in state universities; and to another Board of Regents Policy, 5-301, which defines "University-sponsored activity" as an activity encompassing the ASASU 2020 Elections. (SAC ¶¶ 8–11.) The Court agrees with Plaintiff that the Board Policies establish a policy favoring free speech on campus, and further agrees that the United States and Arizona Constitutions protect free speech on campus. The Court disagrees, however, that these Policies imposed a duty on any of the three named Defendants to intervene in the student supreme court disqualification decision.

The SAC twice alleges that ASU's organizational chart provides the evidence that the University's duties to protect Plaintiff's free speech rights in the student election were delegated to the three Defendants. (SAC ¶¶ 10, 13.) But the SAC does not include an excerpt, specifics of ASU's organizational chart, or any factual content at all supporting this allegation. (*See* SAC.) Rather, the SAC simply alleges that the "line of authority (and thus responsibility)" flowed "from the [Board of Regents] to each of the Defendants." (SAC ¶ 13.) This is precisely the type of "conclusory" allegation that is "not entitled to be assumed true." *Iqbal*, 556 U.S. at 681 (citing *Twombly*, 550 U.S. at 554–55); *id.* at 678 ("Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" (quoting *Twombly*, 550 U.S. at 557)). This factually unsupported allegation is insufficient to establish that each Defendant proximately caused the alleged violation. *See Arnold v. Int'l Bus. Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981) (stating that 42 U.S.C. § 1983 requires plaintiff to plausibly allege that each defendant "personally participated in a deprivation of the plaintiff's rights, or caused such a deprivation to occur[]" and that plaintiffs must establish that each defendant "proximate[ly] . . . caus[ed]" the deprivation).[4]

---

[4] Plaintiff also argues that the SAC establishes state action sufficient to state a free speech violation under the United States Constitution. (*See* Resp. at 10–15.) But this argument ignores that the FAC suffered not from a failure to establish state action, but rather a failure to establish individual liability for each named Defendant as required by 42 U.S.C. § 1983.

The Court finds that the allegations contained in the SAC are insufficient to establish that any of the three Defendants proximately caused the alleged free speech violation.

**B.     Requested Relief**

The Court next considers Defendants' alternative argument that the SAC should be dismissed because it alleges no viable bases for relief. (Mot. at 8–13.)

Defendants first argue that the relief requested in paragraphs (A), (B), (C), (D), (E), (F), and (G) of the SAC is barred by the Eleventh Amendment. "The Eleventh Amendment bars claims for damages against a state official acting in his or her official capacity." *Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016) (citing *Pena v. Gardner*, 976 F.2d 469, 472 (9th Cir. 1992)). The SAC names Defendants Aska, Hicks, and Rosenkrantz in their official capacities as Dean of Students, Senior Associate Dean of Students, and as Executive Director of ASASU, respectively. (SAC ¶¶ 2–6.) Because these individuals are sued in their official capacities, they are "entitled to Eleventh Amendment immunity" unless the SAC comes within the limited exception provided by *Ex parte Young*.[5] *See Students for a Conservative Am. v. Greenwood*, 378 F.3d 1129, 1130 (9th Cir. 2004) (citing *Ex parte Young*, 209 U.S. 123), *amended*, 391 F.3d 978 (9th Cir. 2004).

"Under the *Ex parte Young* doctrine, a plaintiff may maintain a suit for *prospective relief* against a state official in his official capacity" when the plaintiff seeks to correct an "ongoing violation" of the Constitution or federal law. *Cardenas v. Anzai*, 311 F.3d 929, 934–35 (9th Cir. 2002) (citing *Ex parte Young*, 209 U.S. at 159–60). "Whether the *Ex parte Young* doctrine applies . . . turns primarily upon one question: Is the relief the plaintiffs seek prospective, aimed at remedying an ongoing violation of federal law, or is it retrospective, aimed at remedying a past violation of the law?" *Id.* at 935. The Ninth Circuit made clear that "[r]elief that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law is barred even when the state official is the named defendant[.]" *Id.* at 936 (citing *Papasan v. Allain*, 478 U.S. 165, 278 (1986)).

---

(*See* 11/19/20 Order at 5 (quoting *Arnold*, 637 F.2d at 1355).)
[5] 209 U.S. 123 (1908).

The relief requested by subsections (A), (C), (D), (F), and (G) of paragraph 133 is undisputedly retrospective. These subsections request: "a declaratory judgment establishing that Plaintiff' First Amendment rights were violated by the conduct of Defendants" (¶ (A)); an injunction "overturning" the student supreme court's past decision (¶ (C)(1)); a "public statement" admitting that the alleged violation occurred (¶ (C)(2)); a declaratory judgment declaring that the specific provisions of the Student Elections Code that were applied to disqualify Plaintiff are unconstitutional (¶ (D)); an injunction requiring the Defendants to make a "public apology" (¶ (F)); and an injunction requiring Defendants to "correct the Election[] Code" (¶ (G)). (SAC ¶ 133 (A), (C)–(D), (F)–(G).) The Court finds this relief "in essence serves to compensate a party injured in the past" so is barred by the Eleventh Amendment. *See Green v. Mansour*, 474 U.S. 64, 73 (1985) (holding that a plaintiff could not obtain a declaratory judgment in federal court that state officials violated federal law in the past under the Eleventh Amendment).

Defendants argue that the relief requested by subsections (B) and (E) is also barred because, at bottom, they seek to remedy conduct—the disqualification of Plaintiff's ticket, and the resulting inauguration of Plaintiff's opponent as student body president—that has already occurred. (Mot. at 13.) This conduct, Defendants argue, is not an "ongoing" violation of federal law, but rather a past violation; relief for which would serve only to compensate Plaintiff for a past wrong. (Mot. at 13); *see Cardenas*, 311 F.3d at 936. Plaintiff's response does not directly address this argument beyond conclusory statements. (*See* Resp. at 20.) But Plaintiff's own description of his injury confirms that it was discrete and happened in the past. Plaintiff describes that

> Plaintiff *has been disqualified* from a democratic election that he won—he *was removed* from the office that he *had won* in an election. Plaintiff's opponent in the election is presently compensated for serving in Plaintiff's duly elected office despite having received 18% fewer votes than Plaintiff. The wages that Plaintiff and his ticket *would have received* total around $50,000. This *was* a "real" injury that he "*has sustained.*"

(*Id*. at 17 (emphasis added).) The Court finds that Plaintiff's injury is not "ongoing" and

- 9 -

1 further finds that the requested remedies seek compensation for a past, completed injury, and that this type of relief is not "prospective" within the meaning of the *Ex parte Young* exception to Eleventh Amendment Immunity.

The Court additionally holds that Plaintiff lacks standing to seek the relief requested in subsections (B) and (E). Subsections (B) and (E) seek injunctions prohibiting future violations similar to the one Plaintiff alleges he suffered. (SAC ¶ 133 (B), (E).) It is well-settled law that plaintiffs must establish standing "for each claim for relief." *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2379 n.6 (2020). When seeking prospective injunctive relief, a plaintiff must establish an injury that is "actual and imminent, not conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (citing *Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). "This requirement assures that 'there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party[.]'" *Id.* (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 221 (1974)). Critically, for a plaintiff seeking prospective injunctive relief, "past wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983). Rather, the plaintiff's "standing to seek the injunction requested depend[s] on whether he [is] likely to suffer future injury." *Id.* at 105.

At most, the SAC alleges that "possible future injury" could occur should Plaintiff "choose[] to become a candidate" in a future election. (SAC ¶ 133 (G).) Conspicuously absent from the SAC is any allegation that (a) Plaintiff has plans to run in this year's election or any future year's election, or (b) that if he were to run in another election, he again would face disqualification by the student supreme court for the campaign activity at issue here *and* that the named Defendants would again fail to correct that decision. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013) (emphasizing that future injury must be "certainly impending"). Plaintiff's standing arguments are all aimed at establishing standing for the *retrospective* relief he requests, which, as detailed above, is

not recoverable in an action against these Defendants. (*See* Resp. at 16–17 (emphasizing that the disqualification was a concrete and particularized injury).) The Court finds that Plaintiff has failed to establish standing for the relief requested in paragraph 133, subsections (B) and (E), of the SAC.

## IV.    CONCLUSION

The SAC fails to establish that any of the Defendants proximately caused the alleged constitutional violation. Even assuming that Plaintiff established proximate cause, Plaintiff is not entitled to any of the relief he requests.

**IT IS ORDERED** granting Defendants' Motion to Dismiss Plaintiff Maximilian Soza Fees' Second Amended Complaint (Doc. 36).

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment in favor of Defendants.

Dated this 15th day of April, 2021.

Susan R. Bolton
United States District Judge